(No. 1057—

JACKSONVILLE GRAIN AND COMMISSION COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 20, 1928.*

L. O. VAUGHT for claimant.

OSCAR E. CARLSTROM, Attorney General; FRANK R. EAGLETON, Assistant Attorney General, for respondent.

Mr. JUSTICE Thomas delivered the opinion of the court:

In its declaration claimant asks for an allowance of $10,000.00 damages to its property and business at Naples, Illinois, alleged to have been caused by the construction of a levee by the State. The Attorney General filed a demurrer to the declaration which we might well sustain; but as both

the claimant and State have taken and filed evidence in the case without waiting for a ruling on the demurrer, we will hear and consider it as though a general traverse had been filed.

The Village of Naples is situated on the east bank of the Illinois River and is subject to overflow in times of high water. Water Street extends north and south along the river bank and Shelley Street extends east from Water Street. The property alleged to have been damaged is immediately south of Shelley Street and east of Water Street, and is 800 feet long east and west and 125 feet wide north and south. An alley extends south from Shelley Street to another street the name of which is not disclosed by the evidence. On this property was located an elevator building about 40 feet wide north and south and about 140 feet long east and west. The property was divided into two lots by the alley and across the alley on the east lot was a large corn crib 40 feet by 80 or 100 feet. The main building was erected in 1885 and was originally built for a warehouse and was remodeled into an elevator in 1913. The elevator building fronted on Water Street. At the southwest corner of this building was the scale for weighing the grain, and east of the scale was the dump. On the north side of the building was the switch where cars were set in for loading. On the east side of Water Street and abutting the elevator was a concrete sidewalk ten feet wide.

In 1913 and 1914 a levee was built along Water Street in front of this property. This levee was 20 feet wide at the base and 8 feet wide on top, the base being parallel with and abutting the sidewalk. Persons wishing to deliver grain to the elevator turned from Shelley Street onto the levee and drove along it till they came opposite the scale, then turned down the levee and across the sidewalk onto the scale and from the scale onto the dump.

This levee was inadequate to protect the village and it suffered severely from the floodwaters in 1922. The village could not raise sufficient funds to build the levee higher, so when the General Assembly met in 1923 the citizens appealed to it for aid. The legislature passed an Act appropriating $10,000.00 to be used in improving and strengthening the levee, the appropriation being made upon the express condition that the village appropriate the maximum amount it

could raise under the constitution and laws for the same purpose. The Act also provided that the money should be expended under the supervision of the Department of Public Works and Buildings. The village raised between $2900.00 and $3000.00, all it could under the limitations placed on its taxing powers by the Constitution. Up to July, 1925, nothing had been done by the Department of Public Works and Buildings. The citizens of the village, knowing the appropriation would lapse if the work was not contracted within the next three months, sent a committee to Springfield to urge the officials to let a contract for the repair of the levee before the appropriation lapsed, and the contract for the work was awarded near the last of September. The village turned its money over to the State officials and the levee was repaired under the supervision of the Department of Public Works and Buildings. The old levee had been constructed to an elevation of 448.5 Memphis Datum and the new, or repaired, levee was raised to an elevation of 452, three and one-half feet higher than the old one.

Claimant purchased the property in question for $5,000.00 October 1, 1924, a year and three months after the money to repair and raise the levee had been appropriated. At the time of the purchase its officers knew the conditions surrounding it and that the levee was to be strengthened and raised. The purchase included all the ground, elevator, scales, cribs and machinery. It operated the elevator until July 1st, 1925, when it leased the property to F. J. Blackburn for one year at a rental of $50.00 per month. At the end of three months, or about October 1, 1925, claimant sold the elevator building to Blackburn for $2000.00, retaining the ground, cribs and scale. Blackburn was building an elevator at Strawn's Crossing and he took down the one claimant sold him and moved it and the machinery there. This sale was made before the new levee was built, it being built in October and November of last year. All the above facts are disclosed by the evidence but it does not disclose why claimant released Blackburn from his contract nine months before it expired.

Claimant, in its declaration, alleges that it has suffered damage of $4000.00 to its building and $6000.00 damages on account of loss of business. The evidence shows, however, that claimant quit the business July 1st, 1925, leasing the property to Blackburn. When private property is taken or

damaged for public use the owner thereof is entitled to just compensation therefor. But the compensation is for the property, not for the business conducted in it. It is not contended that any of claimant's property was taken or used in the repair of the levee but that its elevator building was rendered useless by the raising, of the height of the levee in front of it. We do not think this contention is supported by the evidence. Claimant's property consisted of two lots with an alley between them, the entire length east and west being 800 feet. The evidence shows that the scale could have been moved near the northeast corner of the lot on which the elevator stood at a very small cost. This would have enabled persons with grain for the elevator to drive from Shelley Street on to the scale and then down the alley to the south portion of the lot. By moving the scale from the southwest corner of the building there would have been 33 feet between the elevator and the south line of the lot, giving ample space to turn on to the dump. It is very apparent from the evidence and the situation of the property that with the expenditure of but a small sum it could have been just as conveniently used for an elevator after the levee was raised as before.

The work the State did was done for the benefit of the village, to save it from destruction by floods and the consequent destitution of its citizens and probable loss of life. The construction of the levee was as much for the benefit of claimant's property as of the other property of the village. If the village were destroyed by floods, claimant's property would become valueless. It was to prevent such a calamity that induced the legislature to make the donation to the village.

The claim is denied and the cause dismissed.